**UNITED STATES DISTRICT COURT EASTERN DISTRICT OF CALIFORNIA**
**FRESNO DIVISION**

FILED

**NICOLAS B. QUIROZ,** Plaintiff,

MAY 0 8 2026

v.

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____

**CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION (CAL FIRE);**
**LORI GARCIA,** individually and in her official capacity as SSM I; **DANA SOLIS,** individually
and in her official capacity as SSM I; **BRIAN HAWKINS,** individually and in his official capacity
as Assistant Chief,

Defendants.

1: 2 6 CV 0 3 5 5 9   KES HBK

**Case No.** _____ **(Assigned upon filing)**

**COMPLAINT FOR VIOLATIONS OF THE AGE DISCRIMINATION IN**
**EMPLOYMENT ACT (29 U.S.C. §§ 621 et seq.) AND THE FAIR EMPLOYMENT AND**
**HOUSING ACT (Cal. Gov. Code §§ 12940 et seq.); RETALIATION; AND CONTINUING**
**ADVERSE ACTION**

**JURY TRIAL DEMANDED**

Plaintiff Nicolas B. Quiroz, a 46-year-old Hispanic male, by and through undersigned pro se,
complains and alleges as follows:

**I. JURISDICTION AND VENUE**

1.  This Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343 because
    this action arises under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29
    U.S.C. §§ 621 et seq., and supplemental jurisdiction over state-law claims under the Fair
    Employment and Housing Act ("FEHA"), Cal. Gov. Code §§ 12940 et seq.
2.  Venue is proper in this District under 28 U.S.C. § 1391(b) because all events giving rise to
    the claims occurred in Fresno and Clovis, California, within the Eastern District of
    California, Fresno Division, and Plaintiff resides in Clovis, California.

**II. PARTIES**

3.  Plaintiff Nicolas B. Quiroz is a 46-year-old Hispanic male employed by Defendant CAL
    FIRE as an Analyst I (formerly SSA) in the Southern Region office in Fresno/Clovis,
    California.
4.  Defendant California Department of Forestry and Fire Protection ("CAL FIRE") is a state
    agency and Plaintiff's employer.
5.  Defendant Lori Garcia is Plaintiff's manager (SSM I) and at all relevant times acted in her
    official capacity and individually under color of state authority.

6. Defendant Dana Solis is now SSM I (she was an AGPA at the time of the February 2025 incident and was promoted to SSM I in October 2025) and at all relevant times acted in her official capacity and individually under color of state authority.

7. Defendant Brian Hawkins is Chief and at all relevant times acted in his official capacity and individually under color of state authority.

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Plaintiff timely filed EEOC Charge No. 485-2026-00121 on or about February 11, 2026. The EEOC issued a Right to Sue letter on February 18, 2026. This Complaint is filed within 90 days of that notice. A true and correct copy is attached as **Exhibit A**.

9. Plaintiff also exhausted internal remedies by filing a Merit Issue Complaint with CAL FIRE HR on December 12, 2025 (deemed denied March 23, 2026), a grievance on December 8, 2025, a PERB unfair practice charge (SA-CO-532-S), and multiple written requests for correction of his personnel record.

## IV. FACTUAL ALLEGATIONS

10. On February 5, 2025, Plaintiff was ill with asthma and a bacterial sinus infection (documented urgent care note) when an incident occurred with then-AGPA Dana Solis.

11. On February 7, 2025, SSM I Lori Garcia issued Plaintiff an Informal Letter of Warning ("LOW"). Chief Brian Hawkins approved it. The LOW was improperly placed in Plaintiff's Official Personnel File for one full year (confirmed in Lori Garcia's June 2, 2025 email).

12. The LOW was then cited in Plaintiff's permanent November 2025 STD 638 performance evaluation under "Relationships with People," resulting in an "I" (Improvement Needed) rating. This tainted evaluation has blocked and will continue to block Plaintiff's promotional opportunities.

13. Plaintiff applied for **two** AGPA/Analyst II positions at CAL FIRE's Southern Region office in Fresno.

The **first position** was filled in early November 2025. Plaintiff was notified that he was not selected the morning before Thanksgiving 2025. A younger candidate, **Michael Abat**, was selected. Michael Abat was **not** a Class C Analyst I at the time and had not satisfied the one-year Class C Analyst I requirement needed to qualify for the Analyst II position. Plaintiff's November 2025 performance evaluation (which cited the February 2025 LOW) was completed by Lori Garcia approximately one week before Plaintiff was notified that Michael Abat had been selected.

In **December 2025**, Plaintiff formally requested a neutral interview panel for a **second** AGPA/Analyst II position because Dana Solis, Lori Garcia, and Brian Hawkins had clear conflicts of interest. The request was ignored. Plaintiff was interviewed for this second position in **January 2026**. The interview panel consisted of Dana Solis (now SSM I), Chief Brian Hawkins, and a third panel member. A much younger candidate, **Angela Davidson**, was selected. Angela Davidson had previously left CAL FIRE for a promotion, was already an Analyst II at the time she applied, and had also applied for the first position that went to Michael Abat.

14. On April 20, 2026 — after Plaintiff filed his MIC, grievance, PERB charge, and EEOC charge — CAL FIRE removed the LOW from Plaintiff's OPF.

15. On April 27, 2026, Plaintiff formally requested that the tainted November 2025 STD 638 evaluation be corrected to remove all references to the now-removed LOW. He followed up on April 30, 2026.

16. On April 30, 2026, Manager Lori Garcia responded in writing on behalf of CAL FIRE and expressly refused to amend the evaluation. She admitted the LOW "was documented in the evaluation" and stated "the STD. 638 will not be amended," citing Government Code § 19992.3. A true and correct copy of this denial is attached as **Exhibit B**. This constitutes continuing adverse action and bad faith retaliation for Plaintiff's protected activity.

17. The November 2025 evaluation remains in Plaintiff's permanent record and continues to harm his career. Plaintiff does not seek the promotion or re-interview in that office; he seeks only correction of his record and damages for the harm already caused.

## V. CAUSES OF ACTION

**COUNT I – ADEA AGE DISCRIMINATION (29 U.S.C. § 623)** (Against Defendant CAL FIRE only) 18. Defendant CAL FIRE discriminated against Plaintiff because of his age (46) by using non-merit factors, including the tainted evaluation and biased panel, in promotional decisions.

**COUNT II – ADEA RETALIATION (29 U.S.C. § 623(d))** (Against Defendant CAL FIRE only) 19. Defendant CAL FIRE retaliated against Plaintiff for engaging in protected activity (MIC, grievance, PERB charge, EEOC charge) by refusing to correct the tainted evaluation even after removing the LOW, as evidenced by Lori Garcia's April 30, 2026 written denial.

**COUNT III – FEHA AGE DISCRIMINATION (Cal. Gov. Code § 12940(a))** (Against all Defendants) 20. Same facts as Count I, incorporated by reference. Defendants Lori Garcia, Dana Solis, and Brian Hawkins are sued individually and in their official capacities.

**COUNT IV – FEHA RETALIATION (Cal. Gov. Code § 12940(h))** (Against all Defendants) 21. Same facts as Count II, incorporated by reference. The April 30, 2026 denial by Lori Garcia is a new adverse action that occurred after the original charge was filed. Defendants Lori Garcia, Dana Solis, and Brian Hawkins are sued individually and in their official capacities.

**COUNT V – FEHA FAILURE TO PREVENT (Cal. Gov. Code § 12940(k))** (Against all Defendants) 22. Defendants failed to take all reasonable steps to prevent age discrimination and retaliation.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

A. Injunctive relief ordering CAL FIRE to immediately correct or remove all references to the February 7, 2025 LOW from Plaintiff's November 2025 STD 638 evaluation and any other personnel records;

B. Compensatory damages for emotional distress, harm to professional reputation, and lost promotional opportunities in an amount to be determined at trial but not less than $75,000;

C. Punitive damages in an amount sufficient to punish and deter Defendants' willful bad faith and continuing retaliation, including the April 30, 2026 denial;

D. Costs of suit and such other relief as the Court deems just and proper.

Dated: May 8, 2026

Respectfully submitted,

/s/ Nicolas B. Quiroz

Nicolas B. Quiroz, Pro Se

652 N. Burl Avenue Clovis, CA 93611

(559) 905-8207

quirozmd2010@gmail.com

**VERIFICATION** I, Nicolas B. Quiroz, declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on May 8th, 2026 in Clovis, California.

/s/ Nicolas B. Quiroz

Nicolas B. Quiroz

**UNITED STATES DISTRICT COURT EASTERN DISTRICT OF CALIFORNIA FRESNO DIVISION**

**NICOLAS B. QUIROZ,** Plaintiff,

v.

**CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION (CAL FIRE), et al.,** Defendants.

Case No. _____ (to be assigned)

## PLAINTIFF'S EXHIBIT LIST

| Exhibit | Description |
| --- | --- |
| A | EEOC Right to Sue Letter dated February 18, 2026 |
| B | Lori Garcia Denial Email Chain dated April 30, 2026 (refusal to correct evaluation) |
| C | LOW Removal Email from Victoria Burnsworth dated April 20, 2026 |
| D | November 2025 STD 638 Performance Evaluation (citing LOW and "I" rating) |
| E | December 18, 2025 Email Request for Neutral Interview Panel |
| F | June 2, 2025 Email from Lori Garcia confirming LOW in OPF for one year |
| G | Dina Lawrence Statement regarding favoritism toward Michael Abat |
| H | February 7, 2025 Informal Letter of Warning, Plaintiff's Rebuttal, and Management's Refusal to Sign (Feb 10, 2025) |

Dated: May 8, 2026

Respectfully submitted,

**/s/ Nicolas B. Quiroz** Nicolas B. Quiroz, Pro Se

**Exhibit A – EEOC Right to Sue Letter (02/18/2026)**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Fresno Local Office**
2500 Tulare Street, Suite 2601
Fresno, CA 93721
(559) 753-8480
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 02/18/2026

To: Nicolas B. Quiroz
652 N BURL AVE
CLOVIS, CA 93611
Charge No: 485-2026-00121

EEOC Representative and email:  JOSE MARTINEZ
EO INVESTIGATOR
JOSE.MARTINEZ@EEOC.GOV

### DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 485-2026-00121.

On behalf of the Commission,

**Jose Martinez**
Digitally signed by Jose Martinez
Date: 2026.02.18 08:15:52 -08'00'    FOR

Armando Hernandez, Director
Fresno Local Office

**Cc:**
Serena Ortega
715 P Street
Sacramento, CA 95814

CAL FIRE Department of Forestry and Fire
401 CLOVIS AVE
Clovis, CA 93612

Alyssa Esposti
CAL FIRE
P O BOX 944246
Sacramento, CA 94244

Please retain this Notice for your records.

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* EEOC's official notice of dismissal**. You should **keep a record of the date you received EEOC's official notice of dismissal**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving EEOC's official notice of dismissal (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA, or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of your receipt of EEOC's official notice of dismissal and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to: https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of EEOC's official notice of dismissal, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a

Enclosure with EEOC Notice of Closure and Rights (05/25)

FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 485-2026-00121 to the District Director at Christine Park-Gonzalez, 255 East Temple St 4th Floor, Los Angeles, CA 90012.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 485-2026-00121 to the District Director at Christine Park-Gonzalez, 255 East Temple St 4th Floor, Los Angeles, CA 90012.

You may request the charge file up to 90 days after receiving EEOC's official notice of dismissal. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

**Response To: Request for Correction of Performance Evaluation**

---

Quiroz, Nicolas@CALFIRE

Burnsworth, Victoria@CALFIRE , Duque, Shannon@CALFIRE

Garcia, Lori@CALFIRE , Hawkins, Brian@CALFIRE , Rubalcava, Veronica , Sotelo-Campos, Teresa

Mon, Apr 27, 2026, 12:00 PM

Good day, Victoria!

I am writing to request correction of my performance evaluation in which a Letter of Warning dated February 7, 2025 was referenced and relied upon.

I understand that this Letter of Warning has now been removed from my Official Personnel File (OPF). Given its removal, the continued inclusion and reliance on this document within a permanent evaluation record results in an ongoing adverse impact based on a document that is no longer maintained as part of my official personnel record.

As you are aware, employment actions within the State civil service system are governed by merit principles under Article VII of the California Constitution and Government Code sections 18670–18671. These principles require that evaluations and related personnel decisions be based on current, job-related, and objective factors.

Additionally, informal corrective actions are intended to be limited in scope and duration. The continued reliance on such a document in a permanent evaluation—particularly after its removal from the OPF—appears inconsistent with these merit-based principles and results in a disproportionate and ongoing impact on employment decisions, including promotional opportunities.

Accordingly, I am requesting that my evaluation be corrected to remove any reference to, or reliance upon, the February 7, 2025 Letter of Warning, and

that the evaluation be revised to reflect appropriate, current performance factors.

Please confirm in writing whether this correction will be made.

Thank you for your time and attention to this matter.

Sincerely,



**Nico Quiroz**
Analyst I - Southern Region
1234 East Shaw Avenue,
Fresno, CA 93710
(559) 243-4160 Office

---

**Quiroz, Nicolas@CALFIRE** Nicolas.Quiroz@fire.ca.gov

**Burnsworth, Victoria@CALFIRE** Victoria.Burnsworth@fire.ca.gov, **Duque, Shannon@CALFIRE** Shannon.Duque@fire.ca.gov

**Garcia, Lori@CALFIRE** Lori.Garcia@fire.ca.gov, **Hawkins, Brian@CALFIRE** Brian.Hawkins@fire.ca.gov, **Rubalcava, Veronica** Rubalcava.Veronica@calfire.ca.gov, **Sotelo-Campos, Teresa** teresa.campos@calfire.ca.gov

**Thu, Apr 30, 2026, 9:21 AM**

Good day, Victoria!

I am following up regarding my email dated **April 27, 2026**, requesting correction of my performance evaluation to remove references to the February 7, 2025 Letter of Warning, which has since been removed from my Official Personnel File (OPF).

To date, I have not received a response or confirmation regarding whether this requested correction will be made.

**2 / 5**

Because this evaluation continues to have potential impact on ongoing employment matters, including promotional opportunities, I am respectfully requesting written confirmation regarding the Department's position on this request.

If the Department intends to review, correct, or decline this request, I respectfully request written notification no later than **May 6, 2026**.

Thank you for your time and attention to this matter. I look forward to your written response.

Sincerely,



**Nico Quiroz**
Analyst I - Southern Region
1234 East Shaw Avenue,
Fresno, CA 93710
(559) 243-4160 Office



---

Burnsworth, Victoria@CALFIRE Victoria.Burnsworth@fire.ca.gov

Quiroz, Nicolas@CALFIRE Nicolas.Quiroz@fire.ca.gov, **Duque, Shannon@CALFIRE** Shannon.Duque@fire.ca.gov

Garcia, Lori@CALFIRE Lori.Garcia@fire.ca.gov, **Hawkins, Brian@CALFIRE** Brian.Hawkins@fire.ca.gov, **Rubalcava, Veronica** rubalcava@calfire.ca.gov, **Sotelo-Campos, Teresa** teresa.campos@calfire.ca.gov

Thu, Apr 30, 2026, 9:25 AM

Hi Nicolas,

I am currently serving in Jury Duty since Tuesday and have not had access to your official personnel file.

I have escalated this to my manager Shannon Duque because I will be out for an extended

amount of time.

Thank you,

Get **Outlook for iOS**

---

    **Garcia, Lori@CALFIRE** Lori.Garcia@fire.ca.gov

    **Quiroz, Nicolas@CALFIRE** Nicolas.Quiroz@fire.ca.gov

    **Burnsworth, Victoria@CALFIRE** Victoria.Burnsworth@fire.ca.gov, **Duque, Shannon@CALFIRE** Shannon.Duque@fire.ca.gov, **Hawkins, Brian@CALFIRE** Brian.Hawkins@fire.ca.gov, **Rubalcava, Veronica** vrubalcava@seiu1000.org, **Sotelo-Campos, Teresa** tsotelo-campos@seiu1000.org

    Thu, Apr 30, 2026, 3:16 PM

Good Afternoon Nico:

CalHR and California Government Code (GC) Chapter 3 – Performance Reports (Sections 19992 -19992.4) regulate the Performance Appraisal Summary (STD. 638) process and establishes a statewide system for performance reporting in state agencies, setting standards, procedures, and uses for performance evaluations. CalHR defines Performance Appraisal Summary, in pertinent part:

> A Performance Appraisal (PA) is a systematic, general, and periodic process that assesses an individual employee's job performance and productivity in relation to pre-established criteria and organizational objectives. Other aspects of individual employees may also be considered, such as behavior, accomplishments, potential for future improvement, strengths, and weaknesses.

> To collect PA data, there are three primary methods: objective production, personnel records, and judgmental evaluation. *The PA must reflect the employee's past performance during the preceding twelve months of work.*

Your Performance Appraisal Summary, dated November 25, 2025, complies with CalHR guidelines by documenting the Letter of Warning (LOW) issued on February 7, 2025—falling within the applicable evaluation period—and by acknowledging your improvement since receiving the LOW. This is exactly how the process is intended to function.

**4 / 5**

Additionally, for clarification, GC Chapter 3, Section 19992.3, states: "Performance reports shall be considered, in the manner prescribed by department rule, in determining salary increases and decreases, the order of layoffs, and the advisability of transfers, demotions, and dismissals."

Given that the Department acted in accordance with established requirements and in good faith, the STD. 638 will not be amended.

If you have additional questions, please let me know.


**Lori Garcia**
Manager – Southern Region
Cost Recovery/Law Enforcement
1234 East Shaw Avenue, Fresno, CA 93710
(559) 246-1510 Cell


---

**4 Emails**

## Re: Request for Removal of Letter of Warning from OPF

---

Quiroz, Nicolas@CALFIRE

Burnsworth, Victoria@CALFIRE , Duque, Shannon@CALFIRE

Garcia, Lori@CALFIRE , Hawkins, Brian@CALFIRE , Rubalcava, Veronica , Sotelo-Campos, Teresa

Mon, Apr 20, 2026, 2:03 PM

BP-50C65_20260206_083552.pdf

Dear Victoria,

I am requesting the removal of the Letter of Warning dated February 7, 2025 from my Official Personnel File (OPF).

As reflected in prior correspondence, including a June 2, 2025 email from management, the duration of this Letter of Warning in my OPF was specifically discussed, and it was determined that it would remain for a defined period rather than being indefinite.

More than one year has now passed since the issuance of the Letter of Warning. Given the passage of time and the nature of the document, its continued retention in my OPF and any ongoing reliance on it for employment-related decisions is no longer appropriate.

I am therefore requesting that the Letter of Warning be removed from my Official Personnel File and that it no longer be considered in any personnel actions moving forward.

Please confirm once this has been completed.

Sincerely,

**Nico Quiroz**

1 / 3



**Analyst I - Southern Region**
**1234 East Shaw Avenue,**
**Fresno, CA 93710**
**(559) 243-4160 Office**

---

**Rubalcava, Veronica**
**Quiroz, Nicolas@CALFIRE**
**Mon, Apr 20, 2026, 2:04 PM**

---

**This Message Is From an External Sender**
This message came from outside your organization.

| Report Suspicious |
| --- |

## THIS IS AN AUTOMATIC REPLY

Thank you for your email. I will be away, Monday, April 20, 2026, and will respond to emails and phone calls upon my return on Wednesday, April 22, 2026.  Please contact the Member Resource Line at 1-866-471-7348 if you need immediate/emergency assistance.  Thank you!


Veronica Rubalcava
Union Representative
SEIU Local 1000

---

**Duque, Shannon@CALFIRE**
**Quiroz, Nicolas@CALFIRE**
**Mon, Apr 20, 2026, 2:04 PM**

I will be attending Cal Fire's Annual AO Conference, Monday, April 20th through Thursday, April 23rd.

I will respond to all email inquires as time permits.

**2 / 3**

If you are in need of immediate assistance, please contact me at 559-978-6589.

Thank you for your patience and understanding, have a great day!

---

**From:** **Burnsworth, Victoria@CALFIRE** Victoria.Burnsworth@fire.ca.gov

**To:** **Quiroz, Nicolas@CALFIRE** Nicolas.Quiroz@fire.ca.gov, **Duque, Shannon@CALFIRE** Shannon.Duque@fire.ca.gov

**Cc:** **Garcia, Lori@CALFIRE** Lori.Garcia@fire.ca.gov, **Hawkins, Brian@CALFIRE** Brian.Hawkins@fire.ca.gov, **Rubalcava, Veronica** vrubalcava@seiu1000.org, **Sotelo-Campos, Teresa** tsotelo-campos@seiu1000.org

**Date:** **Mon, Apr 20, 2026, 2:43 PM**

Good afternoon Nicolas,

After careful review this has been removed from your OPF.

Thank you,



**Victoria Burnsworth**
Personnel Specialist – Southern Region
1234 E Shaw Ave, Fresno, CA 93710
559-243-4102 (Office)
   

---

**4 Emails**

STATE OF CALIFORNIA - DEPARTMENT OF HUMAN RESOURCES

# PERFORMANCE APPRAISAL SUMMARY
OF PAST JOB PERFORMANCE OF PERMANENT EMPLOYEES

STD. 638 (REV. 10/2019)

| EMPLOYEE LAST NAME | FIRST NAME | MI | DATE OF LAST PAS DISCUSSION |
|---|---|---|---|
| Quiroz | Nicolas | B | 11/25/2024 |

| CIVIL SERVICE TITLE | POSITION NUMBER | EMPLOYEE'S HEADQUARTERS |
|---|---|---|
| Staff Services Analyst | 541-401-5157-021 | CSR-F |

| STATE DEPARTMENT NAME | DEPARTMENT SUBDIVISION |
|---|---|
| CAL FIRE | Cost Recovery/Law Enforcement |

The supervisor may make "comments" only, or may use rating categories only, or may use either or both methods of appraisal on any performance factor, as he or she prefers. The rating categories are:
I - Improvement needed for performance to meet expected standards
M - Performance fully meets expected standards
E - Performance consistently exceeds expected standards.

---

☐ I
☐ M
☒ E

**1. QUALITY OF WORK:** Consider the extent to which completed work is accurate, neat, well-organized, thorough, and effective.

Your work area is neat and well-organized. You are detail-oriented and thorough. You are more familiar with FI$Cal, and the quality of purchase orders for janitorial and office supplies has improved. I did a thorough review of a civil Activity Reporting and Costs Summary (ARC) you were responsible to complete, and we covered in length all the findings. From this process, you expressed that you learned a lot and are more clear on what is expected. Applying what you learned in the review will increase the accuracy and reliability of future ARCs.

---

☐ I
☒ M
☐ E

**2. QUANTITY OF WORK:** Consider the extent to which the amount of work produced compares to quality standards for the job.

You crossed over and assisted the agreement reimbursement program with Federal Emergency Management Agency (FEMA) ARCs for the Los Angeles fire siege, which occurred in January 2025. The deadline for the FEMA ARCs to the Emergency Response Billing Unit was extremely tight, and FEMA kept changing both their expectations and deadlines. All the work you were assigned was completed and met the deadlines.

---

☐ I
☒ M
☐ E

**3. WORK HABITS:** Consider the employee's effectiveness in organizing and using work tools and time, in caring for equipment and materials, in following good practices of vehicle and personal safety, etc.

You arrive to work on time. You are focused on and committed to the work assigned to you. A reminder that allowing your personal cell phone to be accessible on your desk while you are working is a privilege. It is your responsibility to keep use to a minimum, reasonable, and not allow it to impact the workflow or workplace in any way.

---

☒ I
☐ M
☐ E

**4. RELATIONSHIPS WITH PEOPLE:** Consider the extent to which the employee recognizes the needs and desires of other people, treats others with respect and courtesy, and inspires their respect and confidence, etc.

On February 7, 2025, you were issued a Letter of Warning for displaying inappropriate behavior to your lead and insubordination to your direct supervisor. We have had a few meetings and open communication since this occurred. There has been an improvement in your attitude. Your efforts to rebuild positive working relationships with your lead, direct supervisor, and management are appreciated. Continue to strive for good working relationships and a positive work environment.

*My daily behavior is meets expectations. One bad moment should not be "I".*

---

☐ I
☒ M
☐ E

**5. TAKING ACTION INDEPENDENTLY:** Consider the extent to which the employee shows initiative in making work improvements, identifying and correcting errors, initiating work activities, etc.

You ask good questions when you are trying to find the answer(s) to an issue. You research problems and provide solutions. You follow up on outstanding issues and keep good documentation.

STATE OF CALIFORNIA - DEPARTMENT OF HUMAN RESOURCES

# PERFORMANCE APPRAISAL SUMMARY

OF PAST JOB PERFORMANCE OF PERMANENT EMPLOYEES

STD. 638 (REV. 10/2019)

| | |
|---|---|
| ☐ I<br><br>☒ M<br><br>☐ E | 6. MEETING WORK COMMITMENTS: Consider the extent to which the employee completes work assignments, meets deadlines, follows established policies and procedures, etc.<br>**You complete the work assigned to you and meet deadlines. Continue to increase your knowledge of all policies and procedures, especially those applicable to Cost Recovery, purchasing, and FI$Cal.** |
| ☐ I<br><br>☐ M<br><br>☒ E | 7. ANALYZING SITUATIONS AND MATERIALS: Consider the extent to which the employee applies consistently good judgment in analyzing work situations and materials, and in drawing sound conclusions.<br>**You make additional effort to analyze information. For example, you use Excel as a tool to gather data and analyze it thoroughly. You also take the initiative to ask additional questions in your auditing process. Some of these questions lead to potential improvements in training and desk reference/business processes.** |
| ☐ I<br><br>☐ M<br><br>☐ E | 8. SUPERVISING THE WORK OF OTHERS: Consider the employee's effectiveness in planning and controlling work activities, motivating and developing subordinates, improving work methods and results, encouraging and supporting employee suggestions for work improvement, applying policies, selecting and developing subordinates in accordance with State Personnel Board and departmental affirmative action policies.<br>**N/A** |
| ☐ I<br><br>☐ M<br><br>☐ E | 9. PERSONNEL MANAGEMENT PRACTICES: Consider the extent to which the employee understands and applies good personnel management practices including affirmative action and upward mobility. Does the employee contribute effectively to the implementation of State Personnel Board and departmental equal employment opportunity policies and to the attainment of affirmative action goals?<br>**N/A** |

GENERAL COMMENTS OR COMMENTS ON OTHER FACTORS

Nico, you are a very hard worker and take a lot of pride in your work. You are willing to do the extra step when asked and do it without complaint. You have expressed a desire to find a position that uses your medical knowledge/experience and/or is in the investigation field. Your happiness is important to us, and we will support you. You are a valuable team member, and I look forward to continue working with you!

| EMPLOYEE SIGNATURE | DATE SIGNED | SUPERVISOR'S SIGNATURE | DATE SIGNED |
|---|---|---|---|
| | 11/25/25 | *garcia* | 11/25/25 |

 Outlook

---

**Re: AGPA Recruitment – Request for Neutral Interview Panel**

---

**From** Quiroz, Nicolas@CALFIRE <Nicolas.Quiroz@fire.ca.gov>
**Date** Mon 1/12/2026 7:44 AM
**To** Nunley, Kim@CALFIRE <Kim.Nunley@fire.ca.gov>
**Cc** Ogle, Matthew@CALFIRE <Matthew.Ogle@fire.ca.gov>

Good day, Kim!

Thank you for the explanation of the general interview process. I appreciate that overview.

To clarify, my request was not about the interview questions or evaluation criteria, but about potential panel composition due to pending grievances and SPB matters in which certain managers are directly involved.

Could you please let me know whether my request for those individuals to be excluded from the interview panel has been approved, denied, or requires further review?

Thank you for your time and consideration.

Respectfully,

 **Nico Quiroz**
Analyst I - Southern Region
1234 East Shaw Avenue,
Fresno, CA 93710
(559) 243-4160 Office

---

**From:** Nunley, Kim@CALFIRE <Kim.Nunley@fire.ca.gov>
**Sent:** Friday, January 9, 2026 5:26 PM
**To:** Quiroz, Nicolas@CALFIRE <Nicolas.Quiroz@fire.ca.gov>

**Cc:** Ogle, Matthew@CALFIRE <Matthew.Ogle@fire.ca.gov>
**Subject:** RE: AGPA Recruitment — Request for Neutral Interview Panel

Good evening Nico,

I apologize for the late reply on this. I want to assure you that CAL FIRE follows strict Best Hiring Practices to ensure the integrity of all aspects of the process. To that end, interviews are conducted using a consistent set of job-related, open-ended questions for all candidates. Questions requiring internal knowledge are prohibited to ensure fairness. Evaluation criteria is established in advance, documented, and based solely on job-related qualifications such as education, experience, communication skills, and transferable skills. Panels are neutral and diverse, consisting of two to three members at or above the position's classification level. Once the selection process has been completed such as the resume review, interviews, etc. as a double check all the material is reviewed by our hiring team to ensure everything was completed accurately and all guidelines were followed. Once these processes have been completed and approved, the supervisor/manager will be given approval to make a selection/offer based on the objective, merit-based assessment of qualifications.

Kind Regards,



**Kim Nunley**
SSMIII – Southern Region
1234 E Shaw Ave., Fresno, CA 93710
(559) 779-6527 Cell

**From:** Quiroz,
Nicolas@CALFIRE <Nicolas.Quiroz@fire.ca.gov>
**Sent:** Friday, December 19, 2025 3:45 PM
**To:** Ogle, Matthew@CALFIRE <Matthew.Ogle@fire.ca.gov>
**Subject:** Re: AGPA Recruitment — Request for Neutral Interview Panel

Good day, Matthew!

Thank you, I appreciate you routing this to the appropriate contact. Could you please let me know who it is once assigned so I can ensure my request is received and addressed prior to any interviews.

Have a good weekend!



**Nico Quiroz**
Staff Services Analyst -
Southern Region
1234 East Shaw Avenue,
Fresno, CA 93710
(559) 243-4160 Office

---

**From:** Ogle, Matthew@CALFIRE <Matthew.Ogle@fire.ca.gov>
**Sent:** Friday, December 19, 2025 3:33 PM
**To:** Quiroz, Nicolas@CALFIRE <Nicolas.Quiroz@fire.ca.gov>
**Subject:** RE: AGPA Recruitment – Request for Neutral Interview Panel

Good Afternoon, Nico,

Thank you for reaching out. This also would not fall under Performance Management but I will get it routed to the correct person on your behalf to address/provide a response.

Have a good weekend!



**W. Matthew Ogle**
Manager, Performance Management - Southern Region
1234 E. Shaw Ave., Fresno, CA 93710
(951) 300-3179 Cell



---

**From:** Quiroz, Nicolas@CALFIRE <Nicolas.Quiroz@fire.ca.gov>
**Sent:** Thursday, December 18, 2025 10:47 AM
**To:** Ogle, Matthew@CALFIRE <Matthew.Ogle@fire.ca.gov>
**Subject:** AGPA Recruitment – Request for Neutral Interview Panel

Good day, Matthew!

I hope you're doing well.

I wanted to let you know that I have applied for the current AGPA vacancy in CSR-F (Celina Aguirre's former position). Given my pending grievance, Merit Issue Complaint, and SPB/EEOC matters involving the February 5, 2025 incident, the February 7, 2025 Informal Letter of Warning, and the prior AGPA recruitment, I am concerned about the appearance of bias if the interview

panel for this AGPA includes individuals who were directly involved in those issues.

Out of respect for the State's merit principles and to help ensure a fair, neutral process, I respectfully request that any interview panel for my candidacy exclude managers who are directly implicated in the prior discipline and pending complaints — specifically SSM I Lori Garcia, SSM I Dana Solis, and Chief Brian Hawkins. I understand that Dana is listed as the contact person on the job posting, which is why I felt it was important to raise this concern in advance.

I am not asking for any special advantage—only that the interview be conducted by a panel that is as impartial as possible given the history. If you are not the appropriate person to handle this, I would appreciate it if you could direct me to the correct HR contact.

Thank you for your time and consideration.



**Nico Quiroz**
Staff Services Analyst -
Southern Region
1234 East Shaw Avenue,
Fresno, CA 93710
(559) 243-4160 Office

---

**From:** Ogle, Matthew@CALFIRE <Matthew.Ogle@fire.ca.gov>
**Sent:** Friday, December 12, 2025 9:13 AM
**To:** Quiroz, Nicolas@CALFIRE <Nicolas.Quiroz@fire.ca.gov>
**Subject:** RE: Grievance – Informal Letter of Warning 2/7/2025 and AGPA Selection Process

Good Morning, Nico,

Thank you for bringing this to our attention. Although this does not fall under the scope of Performance Management, I recommend you submit as a Merit Issue Complaint.

A letter detailing your concerns can be sent to the following address:

CAL FIRE
P.O. BOX 944246
SACRAMENTO, CA 92422-2460

ATTN: Human Resource Management: Merit Issue Complaints

I hope that helps!

 **W. Matthew Ogle**
Manager, Performance Management - Southern Region
1234 E. Shaw Ave., Fresno, CA 93710
(951) 300-3179 Cell


---

**From:** Quiroz, Nicolas@CALFIRE <Nicolas.Quiroz@fire.ca.gov>
**Sent:** Monday, December 8, 2025 2:09 PM
**To:** Burnsworth, Victoria@CALFIRE <Victoria.Burnsworth@fire.ca.gov>; Ogle, Matthew@CALFIRE <Matthew.Ogle@fire.ca.gov>
**Subject:** Grievance – Informal Letter of Warning 2/7/2025 and AGPA Selection Process

# Good day, Victoria and Matthew!

**Issue:** I am grieving the issuance and ongoing use of the February 7, 2025 Informal Letter of Warning and the subsequent promotional process for the AGPA position. I believe there was favoritism/nepotism, an unfair and non–merit-based interview process, and retaliation in how the incident and Letter of Warning have been used against me and my promotional opportunities.

## Facts:
– I have been employed as a Staff Services Analyst at CSR-F since July 17, 2023, with previously positive performance, including good quality of work, initiative, and relationships with people.
– On February 5, 2025, an incident occurred involving my then-lead **Dana Solis (AGPA)**, my supervisor **Lori Garcia (SSM I)**, and my coworker **Michael Abat (SSA)**.
– Dana approached me about the Mountain Fire audit in a harsh and disrespectful tone and handled papers on my desk, despite my prior requests that she not touch my work area. This is part of a pattern where she has spoken to me more harshly than to male coworkers.

– When I later went to clarify work with Michael, Dana came around the corner visibly upset and again spoke to me in a disrespectful tone. I briefly raised my hands toward Lori as a nonverbal request for supervisory support and said words to the effect of "So this is how it is going to be" and "So this is how you are going to talk to me." I did not threaten anyone or use profanity.

– At that time I was sick with asthma and a bacterial sinus infection, with persistent coughing and lack of sleep. I had just returned from urgent care with a doctor's note and had informed my supervisors of my condition.

– Lori repeatedly insisted that I immediately go into a private office with her and Dana while I was upset and asking for space. Because Dana's tone had not been addressed in the moment and I did not feel safe or heard, I declined to meet right then and asked several times to be left alone so I could calm down.

– On February 6, 2025, I was called into a meeting in an office with **Chief Brian Hawkins**, Lori, and Dana all present together. I was never offered a one-on-one meeting or a truly neutral person to hear my side.

– On February 7, 2025, I was issued an **Informal Letter of Warning** for "inappropriate behavior" and "insubordination." When I tried to explain that the letter left out important context, I was told by Chief Hawkins that "that ship has sailed." I signed the letter under pressure, then submitted a written rebuttal on February 10, 2025, disagreeing with the characterization of my behavior.

– Later, in my performance evaluation, Lori again highlighted this same incident under "Relationships with People," reinforcing a negative label based on that one situation rather than my overall work performance.

– In approximately September or October 2025, **Dana was promoted from AGPA to SSM I**, and an **AGPA position** was posted that now reports under Dana as SSM I. I applied for this AGPA position. Lori is also an SSM I in the same office.

– My coworker **Michael Abat** was also allowed to interview for the

AGPA position even though, to my knowledge, he had not been in Class C for at least one year and had never done purchase orders, which are required duties for the AGPA role. I do not believe he met the minimum experience requirements for the duty statement.

– There is a close personal relationship between Michael and Lori's family (Michael is friends with Lori's daughter). This created a perception of favoritism or nepotism when he was advanced and ultimately selected for the position.

– My interview panel for the AGPA position consisted of **Dana (now SSM I)**, **Chief Hawkins**, and a supposed neutral person. Given Dana's direct involvement in the February 5 incident and the Letter of Warning, and Chief Hawkins' role in issuing and upholding that letter, I do not believe the panel was neutral or unbiased.

– The AGPA position was awarded to Michael, despite his lack of required experience, while the February 5 incident and the Informal Letter of Warning were used to portray me as having "inappropriate behavior" and relationship issues. I believe this discipline has been used to block my advancement rather than to correct conduct.

– I attempted to resolve this with union assistance, but my local representative did not show up for two scheduled meetings and, at the third, did not meaningfully advocate for me or address my concerns about the Letter of Warning and the promotional process.

Taken together, I believe the February 5 incident was mischaracterized, the Informal Letter of Warning was issued without proper consideration of context and my health, and that the letter and incident have been used in a biased and retaliatory way to harm my promotional opportunities and support a hiring decision influenced by favoritism toward Michael. I am also concerned that the recruitment may not have been conducted in a fully merit-based and transparent manner, including the scoring and any direction or preference expressed

by Sacramento or higher management regarding who should be selected.

## Remedy requested

– Removal or rescission of the February 7, 2025 Informal Letter of Warning from my personnel file, or at minimum written confirmation that it will not be used against me in any hiring, promotion, evaluation, or disciplinary decisions.

– A fair review of the AGPA recruitment, including whether minimum qualifications were met, whether panel members who were directly involved in prior discipline should have been on the panel, and whether the scoring was consistent with a neutral, merit-based process.

– Full transparency of the selection process by providing me with:

• My interview rating sheets and the scores given by each panel member for each question;

• My total or combined score and my final ranking on the eligibility or certification list for this AGPA position;

• The corresponding scoring and ranking information for the selected candidate, in at least summary form as allowed by policy; and

• Any written notes, emails, or other documentation from Sacramento or higher-level management indicating a preference or direction regarding who should be selected for this AGPA position.

– Assurance and documentation that I will not be retaliated against for filing this grievance and that the February 5 incident will not be used to unfairly characterize my relationships with coworkers or block future promotions.

– Any additional remedy appropriate under the MOU to restore me as closely as possible to the position I would likely have been in without the unfair discipline, bias, and favoritism.



**Nico Quiroz**

Staff Services Analyst – Southern Region

1234 East Shaw Avenue,
Fresno, CA 93710

(559) 243-4160 Office



Exhibit F – June 2, 2025 Lori Garcia OPF Email

 Outlook

## Quiroz: Informal Meeting on May 28, 2025

**From** Garcia, Lori@CALFIRE <Lori.Garcia@fire.ca.gov>

**Date** Mon 6/2/2025 4:56 PM

**To** Rubalcava, Veronica <vrubalcava@seiu1000.org>

**Cc** Quiroz, Nicolas@CALFIRE <Nicolas.Quiroz@fire.ca.gov>; Sotelo-Campos, Teresa <tsotelo-campos@seiu1000.org>; Hawkins, Brian@CALFIRE <Brian.Hawkins@fire.ca.gov>

Good Afternoon Veronica:

This email is to express my sincere appreciation for scheduling the meeting Nico requested to discuss the Letter of Warning (LOW) issued to him on February 7, 2025. At the conclusion of the meeting, there was one question pending. You asked if the length of time the LOW will remain in Nico's Official Personnel File (OPF) can be shortened to less than one year. After carefully considering each of the points brought forward by you and Nico, my decision is the LOW will remain in Nico's OPF for one year.

Thank you again for your time, and the opportunity to have a productive discussion.

Best Regards,



Lori Garcia
Manager – Southern Region
Cost Recovery/Law Enforcement
1234 East Shaw Avenue, Fresno, CA 93710

**Exhibit G – Dina Lawrence Statement**



DL Lawrence, Dina@CALFIRE    Chat    Shared    ⊞

Today

Lawrence, Dina@CALFIRE  7:34 AM

I am writing to formally express my concern regarding ongoing favoritism in the workplace that has negatively affected fairness, morale, and my ability to perform my job under equal conditions.

Over a period of time, I have observed that certain employees are consistently given preferential treatment. This includes, but is not limited to, more favorable schedules, lighter workloads, leniency regarding workplace rules, and greater access to opportunities such as time off, training, or advancement. Meanwhile, other employees, including myself, are held to stricter standards and do not receive the same consideration.

This pattern of favoritism has created an unfair work environment and has contributed to increased stress, low morale, and a lack of trust in management's decision-making. I believe all employees should be treated equitably and evaluated based on performance and conduct rather than personal relationships or preferences.

I am bringing this matter forward in hopes that it can be reviewed and addressed professionally. My intention is not to create conflict, but to advocate for a fair, respectful, and consistent workplace for everyone.

On multiple occasions, I have reported specific employee behavior that negatively affects the workplace, including professionalism, teamwork, and overall morale. Each time, I was assured the matter would be looked into. However, there has been no visible follow-up, corrective action, or communication regarding the outcome of these complaints.

The lack of response has created frustration and the impression that employee concerns are not taken seriously or handled consistently. When issues go unresolved, it impacts productivity, fairness, and trust in management.

I am respectfully requesting that these concerns be reviewed and addressed promptly, and that clear communication be provided regarding what steps, if any, are being taken. I believe accountability and consistency are essential to maintaining a respectful and effective work environment.

I cannot attest to anything that happened on Feb 5th. I did not witness anything



Word   12.docx   **Open in Word**  ⌄   🖬 Save as                                                                    ⬚   ✕

Word                                                        🗔 Accessibility Mode   🖨 Print   ❓ Help   🔓 Accessibility Help (Alt+Shift+A)   •••

12/16/25

I am writing to formally express my concern regarding ongoing favoritism in the workplace that has negatively affected fairness, morale, and my ability to perform my job under equal conditions.

Over a period of time, I have observed that certain employees are consistently given preferential treatment. This includes, but is not limited to, more favorable schedules, lighter workloads, leniency regarding workplace rules, and greater access to opportunities such as time off, training, or advancement. Meanwhile, other employees, including myself, are held to stricter standards and do not receive the same consideration.

This pattern of favoritism has created an unfair work environment and has contributed to increased stress, low morale, and a lack of trust in management's decision-making. I believe all employees should be treated equitably and evaluated based on performance and conduct rather than personal relationships or preferences.

I am bringing this matter forward in hopes that it can be reviewed and addressed professionally. My intention is not to create conflict, but to advocate for a fair, respectful, and consistent workplace for everyone.

I am writing to formally express my concern regarding the apparent favoritism in training opportunities within our workplace. It has become noticeable that one individual (Michael Abat) is consistently provided with preferred training, guidance, and development opportunities that are not equally offered to the rest of the employees.

This unequal distribution of training creates an unfair work environment and limits other employees' ability to grow, perform effectively, and advance. Equal access to training is essential for maintaining morale, ensuring consistent performance standards, and fostering a fair and productive workplace.

I respectfully request that management review how training opportunities are assigned and take steps to ensure they are distributed fairly and transparently among all employees. On multiple occasions, I have reported specific employee behavior that negatively affects the workplace, including professionalism, teamwork, and overall morale. Each time, I was assured the matter would be looked into. However, there has been no visible follow-up, corrective action, or communication regarding the outcome of these complaints.

The lack of response has created frustration and the impression that employee concerns are not taken seriously or handled consistently. When issues go unresolved, it impacts productivity, fairness, and trust in management.

I am respectfully requesting that these concerns be reviewed and addressed promptly, and that clear communication be provided regarding what steps, if any, are being taken. I believe accountability and consistency are essential to maintaining a respectful and effective work environment.

I am retiring because ineffective management has created a work environment that is no longer sustainable for me. I have been treated unfairly for over ten years in my same position, I have never been given the opportunity to advance, because of the poorly run management of CALFIRE Cost Recovery Program.

Case 1:26-cv-03559-KES-HBK    Document 1    Filed 05/08/26    Page 33 of 44

STATE OF CALIFORNIA – NATURAL RESOURCES AGENCY                                                    Gavin Newsom, Governor



**DEPARTMENT OF FORESTRY AND FIRE PROTECTION**
1234 East Shaw Avenue
Fresno, California 93710-7840
(559) 243-4100
Website: www.fire.ca.gov



# PERSONAL AND CONFIDENTIAL
# NOTICE OF LETTER OF WARNING (INFORMAL)

Nicolas B. Quiroz
XXX-XX-On File
Staff Services Analyst
California Department of Forestry and Fire Protection (CAL FIRE)
Southern Region Headquarters-Fresno – Cost Recovery
1234 East Shaw Avenue
Fresno, California 93710

On Wednesday, February 5, 2025, at approximately 9:40 AM, you displayed inappropriate behavior to your lead, Dana Solis, Associate Governmental Program Analyst (AGPA), and to other co-workers in the office. Secondly, when I requested you three different times to come to a private office to discuss the incident between Dana and you, all three times you refused. This is unacceptable behavior for an employee in our office.

The incident began when you approached Michael Abat's, Staff Services Analyst (SSA), desk and asked him about a stack of electronic *FC-33 – Personnel and Equipment Reports* (eFC33) he was starting to audit. You told Michael that you had already audited the documents. Michael responded that the documents were assigned to him by Dana to audit for Fire Management Assistance Grant (FMAG) cost recovery purposes.

Dana overhead the conversation between Michael and you. She came over to Michael's desk to clarify with you that the eFC33s at your desk were ones that still needed to be audited, which was her understanding when she originally asked you about the status of the documents prior to this incident. You confirmed she understood you correctly. Dana let you know that the eFC33s she assigned Michael were from your desk, and they were not the eFC33s you had already audited and given to her for AGPA review. However, you assumed Dana gave Michael the eFC33s you had audited, and this assumption was incorrect. As this was all unfolding, it was noticeable that Michael was trying not to upset you in any way. Once you realized the eFC33 documents were the unaudited ones, in a defensive and aggressive manner, you turned left towards Dana's direction while raising both arms out by each side, palms were facing up, and said, "Is this how it is going to be? This is how you are going to talk to me now." You emphasized to Dana that her tone of voice and body language were more derogatory/different towards you when compared to how she communicates with others in the office. Dana said that she wanted to talk about it because she did not want any unresolved feelings about what happened, and she wanted to apologize for any negative perception you may have had about what she said or how she said it.

*"The Department of Forestry and Fire Protection serves and safeguards the people and protects the property and resources of California."*

Nicolas B. Quiroz
Page 2

I was sitting at the desk next to Michael and observed the entire incident. I, as the Manager, was providing Dana, as the lead, the opportunity to resolve the matter at the lowest level. However, when the discussion progressed to a point this was no longer feasible, I requested for the three of us to go into a private office to resolve the conflict between Dana and you. Dana began to follow me, and you sat down at your desk. When I noticed you were not coming, I stood in the office doorway and requested a second time for you to please come into the office so we could work this out between the both of you. You told me "No, I do not want to talk about it". For a third time, I requested that you come into the office. You remained sitting at your desk and avoided eye contact. You were looking at your computer and scooted closer to your desk. You motioned towards your computer with both hands, fingers outstretched and palms facing one another, and in a firmer, assertive tone said you did not want to talk, and all you wanted to do was do your work and complete it by the deadline. Realizing you were not going to come into the office by your own volition, I advised my supervisor, Assistant Chief Brian Hawkins and Deputy Chief Tim Rogers, Program Manager, of the incident.

On Thursday, February 6, 2025, at about 9:15 AM, Chief Hawkins requested Dana, you, and I to come into his office. The intent was to provide both you and Dana with an opportunity to express how you each felt and see if the issue could be mitigated. Dana was asked to go first, and she communicated her feelings about what occurred. While Dana was talking, you avoided eye contact with everyone in the room, stared at the ceiling, and sat rigidly in the chair. Chief Hawkins expressed that he was trying to have a meaningful conversation, and you refused to engage. You said that you had nothing to say and wanted to get back to work. The meeting was concluded.

The incident on Wednesday, February 5, 2025, is a two-fold problem. Additionally, the incident occurred in the office directly in front of your other co-workers (i.e., Celina Aguirre, AGPA; Ryan Wiezycki, SSA; and Dina Lawrence, Office Technician).

Firstly, this is not the way to inquire about work assigned to another co-worker by the AGPA. Your behavior (discourteous tone of voice and aggressive body language) was inappropriate. Moving forward, if there is a concern about work assignments or work product, you will bring all questions to the lead's attention in a private setting. If it cannot be resolved amicably, the issue will be brought to me for resolution.

Secondly, I requested three times consecutively for you to come into the private office, and all three times you refused. This is obvious insubordination. This is unacceptable behavior and will not be tolerated.

Attendance and work performance problems are sometimes characteristic of an outside problem. You are advised that the Department's Employee Assistance Program (EAP) is available to you 24 hours a day, 7 days a week and can be accessed by calling 1 (866) 327-4762 or TDD 1 (800) 327-0801. You may also visit EAP on the web at http://www.eap.calhr.ca.gov.

Nicolas B. Quiroz
Page 2

1 (866) 327-4762 or TDD 1 (800) 327-0801. You may also visit EAP on the web at
http://www.eap.calhr.ca.gov.

This Letter of Warning shall remain in your official personnel file for one year, and will be removed after that period upon your written request.

You are entitled to submit a written rebuttal, which will be attached to this letter.

Your conduct on this occasion was unacceptable, and will not be tolerated by this Department. If you engage in similar conduct in the future, the department may take Adverse Action against you based on the incidents cited in this memorandum, as well as any future incidents.

NICOLAS QUIROZ *I DISAGREE WITH*          2-7-25
Staff Services Analyst  *THIS .*          February 7, 2025


LORI GARCIA                               02/07/2025
Staff Services Manager I                  February 7, 2025

**Date:** 2/10/2025

**To:** Chief Brian Hawkins, CSR-F Assistant Chief, and Lori Garcia, CSR-F SSM1
Department of Forestry and Fire Protection (CAL FIRE)
1234 East Shaw Avenue
Fresno, CA 93710

**From:**
Nicolas B. Quiroz
Staff Services Analyst (SSA)
Southern Region Headquarters – CSR-F
1234 East Shaw Avenue
Fresno, CA 93710

**Subject: Written Rebuttal to Letter of Warning Dated 2/10/2025**

To whom it may concern,

I am writing in response to the Informal Letter of Warning dated February 7, 2025. After carefully reviewing its contents, I believe it misrepresents the events of February 5, 2025, and omits critical context. I would therefore like to submit the following rebuttal for inclusion in my personnel file.

# 1. Context and Working Relationships

I have been employed with CAL FIRE for approximately one and a half years. Ms. Dana Solis has served the department for over a decade, and over time I have perceived a notable difference in how she speaks to me versus other male colleagues. This disparity in tone and approach set the stage for the incident on February 5.

Additionally, there are inter-office relationships that raise concerns about partiality. For instance, Mr. Michael Abat is friends with my supervisor Lori's daughter. This dynamic has led me to believe my perspective would not be heard fairly.

# 2. Sequence of Events on February 5, 2025

1. **Ms. Solis Approaches My Desk**
   o  Before I spoke with Michael, Ms. Solis came over to my desk in an unfriendly tone and asked where I stood with the Mountain Fire audit. I will give her the benefit of doubt that she was stressed with deadlines. I pointed out the documents I had already completed and those still pending.

- o Ms. Solis has a history of touching my things or shifting my papers while talking—an issue I have repeatedly asked her to stop. Despite my prior requests, she did so again before stating that she would take half of what remained to give to Michael, implying that he and I would work on it together.

2. **Conversation with Michael (SSA)**
   - o A couple minutes later I approached Michael at his desk—which is situated in a corridor-like area—to clarify assigned audit files and avoid duplication, since I had already audited AIR, CREWS, and ENGINES.

3. **Ms. Solis's Interjection**
   - o From my vantage point, I could see Ms. Solis quickly come around the wall from her desk, appearing visibly bothered. She immediately addressed me in a harsh or disrespectful tone. Neither Michael nor Lori intervened, though they both witnessed her demeanor.

4. **My Hand Gesture**
   - o When Ms. Solis continued speaking to me in what I perceived to be a discourteous manner, I briefly raised my hands, palms up, toward Lori (my supervisor). This was not an act of aggression but rather a nonverbal request for managerial support—essentially saying, "Are you seeing how she is speaking to me? Are you going to address this?"
   - o I then verbalized my disappointment with the words, "So this is how it's going to be," directed toward Lori, and "So this is how you're going to talk to me," directed at Ms. Solis.

5. **Refusal to Move into a Private Office**
   - o At that point, I was clearly upset and felt unheard. Lori suggested going into a private room to talk. Given that she had not addressed Ms. Solis's tone in the moment, I declined. I walked to my desk to cool off and regain my composure.

6. **Continued Requests to Talk**
   - o Lori and Ms. Solis approached my area again, insisting that I speak "right then and there." I once more said "no," more firmly this time, because I needed space.
   - o Ms. Solis then approached my desk suddenly adopting a "sweet" tone that felt disingenuous compared to her earlier harshness. I even remarked that she had not spoken to me this way moments prior. She persisted in having me listen to her, not respecting my demand for space. It felt antagonistic, like she was trying to get a rise out of me.
   - o In an attempt to distance myself, I turned my body away from her; however, Ms. Solis walked around to the other side of my desk and continued pushing for a conversation. At that point, I stated more emphatically, "OK, let me be."
   - o Only then did Ms. Solis finally leave the immediate area and walk toward the kitchen. This was completely left out from the informal warning letter, and Lori was still in the area and did nothing to provide me with the space I needed to compose myself.

## 3. Health Concerns

It is important to note that I was physically unwell with a persistent cough, headaches, and post-nasal drip (related to asthma and a bacterial sinus infection). Although my doctor's note cleared me for return on February 6, I lacked the available leave to stay out longer and returned to work earlier than ideal. My physical discomfort on February 5 and 6 contributed to my stress and need for space when these confrontations arose.

## 4. Subsequent Meeting on February 6, 2025

- **Group Setting Only**: The following day, I was asked to meet with Chief Brian Hawkins, Lori, and Ms. Solis. I was never offered a private, one-on-one conversation to share my perspective without Ms. Solis present.
- **Dana's Account**: Ms. Solis spoke first, providing a version of events that felt incomplete and insincere to me. She omitted several key details regarding her tone and approach.
- **No Openness to My Explanation**: When it was my turn to speak, I sensed that decisions had already been made and that my points would not receive fair consideration. Moreover, I was physically struggling with postnasal drip and a persistent cough, so I kept my gaze fixed on the clock the entire time to help manage my symptoms. Observing the facial expressions of Chief Hawkins and Lori convinced me that my input would not change their conclusions; consequently, I chose not to prolong the meeting.

## 5. Signing the Informal Letter (February 7, 2025)

On February 7, I was asked again to come into the office with Chief Hawkins and Lori to sign the informal Letter of Warning. I expressed my disagreement and attempted to note that much of what was written lacked crucial context. Chief Hawkins responded, *"That ship has sailed,"* which further confirmed my sense that my side of the story would not be heard.

## 6. Key Points Omitted from the Letter of Warning

1. **Dana's Ongoing Disrespect**
   - Ms. Solis has repeatedly addressed me in a condescending manner, which I have found particularly noticeable compared to how she interacts with other male colleagues.
2. **Managerial Inaction**
   - Lori did not address Ms. Solis's behavior in the moment. This silence not only escalated my frustration but also undermined my trust in a subsequent "private meeting."
3. **My Physical Condition**
   - My health issues caused me significant discomfort, exacerbating my stress during the confrontation and limiting my ability to engage in lengthy discussions.

4. **Perception of Bias**
   o Given Ms. Solis's seniority and personal connections among the team (including Michael's friendship with Lori's daughter), I feared my concerns would be overshadowed or dismissed.
5. **Lack of One-on-One Mediation**
   o I was never provided an opportunity to share my perspective privately with a neutral party, nor did anyone ask how I was coping after the initial incident.

# 7. Reaffirming My Commitment

I respectfully disagree with the characterization that my actions constituted insubordination or aggressiveness. My refusal to meet immediately and in a group setting was driven by:

- A need for emotional and physical space due to my health.
- The absence of real-time managerial support when Ms. Solis's tone was problematic.
- Concern that a joint meeting would be biased against me.

Nonetheless, I remain committed to fostering a respectful workplace, meeting deadlines, and collaborating productively with all team members—provided that respect is mutual.

# 8. Request for Fair Consideration and Corrective Action

I respectfully request that:

1. **This Written Rebuttal** be attached to any copies of the Letter of Warning in my personnel file.
2. **Further Review** be conducted regarding the role of managerial intervention in conflicts, ensuring employees' concerns are addressed without bias.
3. **Individual Mediation** be offered as an option for resolving ongoing tensions, rather than group meetings in which one party's perspective may predominate.

Thank you for taking the time to review this rebuttal. I look forward to any steps the department may take to ensure a fair, balanced, and respectful workplace.

**Respectfully,**

_Date:_ _____

_____

**Nicolas B. Quiroz**
Staff Services Analyst (SSA)
Southern Region Headquarters – CSR-F
Nicolas.Quiroz@fire.ca.gov
559-905-8207

Proof that both Chief Hawkins and Lori Garcia were aware of my health condition includes a text message I sent at 5:15 a.m. on February 4, 2025. That same week, I also discussed my lack of sleep with Lori Garcia in the kitchen. During our conversation, she noted that I had "lost the twinkle in my eye" that I normally have. My sleeplessness stemmed from persistent coughing, asthma, bacterial sinus infection, and headaches.





# Premium
# URGENT CARE

**2021 Herndon Ave Suite 101**
**CLOVIS, CA 936116101**
**559-797-4315**
**559-321-8730**

**Patient Name:** Nicolas Quiroz    **DOB:** 01/11/1980

Nicolas was seen in the office on February 04, 2025 for medical reasons, and may return to work on February 6, 2025

**Signature:**_____    **DATE:** 02/04/2025

☐   Erick J. Green, MD                          ☐   Rajdeep Basran, NP

☐   Douglas Kerr, MD                          ☐   Sylvia Aparicio, NP

☐   Angela Sabry, MD                          ☐

**Please confirm that you have read my rebuttal.**

_____    **Date:**_____

**Chief Brian Hawkins, CSR-F Assistant Chief**

_____    **Date:**_____

**Lori Garcia, CSR-F SSM1**

 Outlook

---

**Re: Complete with Docusign: Nico Quiroz Written Rebuttal to Letter of Warning 2-10-2025.pdf**

---

**From** Hawkins, Brian@CALFIRE <Brian.Hawkins@fire.ca.gov>

**Date** Mon 2/10/2025 3:25 PM

**To** Quiroz, Nicolas@CALFIRE <Nicolas.Quiroz@fire.ca.gov>

**Cc** Garcia, Lori@CALFIRE <Lori.Garcia@fire.ca.gov>


Good afternoon Nico,

Your LOW rebuttal document has been received and read, and has been attached and filed appropriately in your OPF with Personnel. Neither Lori Garcia or myself will be signing this document. This email will serve as receipt for you that the document was received and read.


Thanks,


**Brian Hawkins**
Assistant Chief – Southern Region
Fire Prevention & Law Enforcement
(559) 317-7047 Cell

---

**From:** DocuSign System <dse_na2@docusign.net> on behalf of Nicolas Quiroz via Docusign <dse_na2@docusign.net>
**Sent:** Monday, February 10, 2025 7:45:57 AM
**To:** Hawkins, Brian@CALFIRE <Brian.Hawkins@fire.ca.gov>
**Subject:** Complete with Docusign: Nico Quiroz Written Rebuttal to Letter of Warning 2-10-2025.pdf


**Warning:** this message is from an external user and should be treated with caution.



Nicolas Quiroz sent you a document to review and sign.

**REVIEW DOCUMENT**

**Nicolas Quiroz**
Nicolas.Quiroz@fire.ca.gov

Brian Hawkins,

Complete with Docusign: Nico Quiroz Written Rebuttal to Letter of Warning 2-10-2025.pdf

Thank You, Nicolas Quiroz

Powered by  docusign.

**Do Not Share This Email**
This email contains a secure link to Docusign. Please do not share this email, link, or access code with others.

**Alternate Signing Method**
Visit Docusign.com, click 'Access Documents', and enter the security code:
D888A528DC1A466286AE5C12FE3F89E12

**About Docusign**
Sign documents electronically in just minutes. It's safe, secure, and legally binding. Whether you're in an office, at home, on-the-go -- or even across the globe -- Docusign provides a professional trusted solution for Digital Transaction Management™.

**Questions about the Document?**
If you need to modify the document or have questions about the details in the document, please reach out to the sender by emailing them directly.

**Stop receiving this email**
Report this email or read more about Declining to sign and Managing notifications.

If you have trouble signing, visit "How to Sign a Document" on our Docusign Support Center, or browse our Docusign Community for more information.

Download the Docusign App

This message was sent to you by Nicolas Quiroz who is using the Docusign Electronic Signature Service. If you would rather not receive email from this sender you may contact the sender with your request.